IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JANET ANN BRUNETTA, | Case No.: 1:15-CV-00873-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Janet Ann Brunetta ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by substantial evidence, her decision is AFFIRMED.

\\\\\

\\\\\

Page 1 - OPINION AND ORDER

*Procedural Background*

Plaintiff filed her application for DIB on July 22, 2011, alleging disability as of July 22, 2011. (Tr. 168-77.) The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 88-92, 99-102, 103-04.) An administrative hearing was held on September 12, 2013. (Tr. 31-66.) After the hearing, the ALJ issued an unfavorable decision on September 19, 2013, finding plaintiff not disabled. (Tr. 14-27.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-3.) This appeal followed. Plaintiff argues that the ALJ erred by: (1) failing to find her depression severe at step two of his analysis; (2) improperly rejecting the medical opinion of Dr. Brian J. Mateja; and (3) failing to provide a clear and convincing reason to reject her subjective symptom testimony.

*Factual Background*

Born in January 1952, plaintiff was 61 years old at the time of the hearing. (Tr. 168.) She speaks English and her highest level of education is one year of college. (Tr. 192, 194.) She stopped working in September 2011 due to her conditions and other reasons, which she described as her employer having financial difficulties. (Tr. 193.) Plaintiff alleges disability due to depression, fibromyalgia, chronic fatigue, sleep apnea, low white blood count, vitamin D deficiency, and hormone imbalance. (*Id.*)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

Page 2 - OPINION AND ORDER


evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NL.R.B.,* 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue,* 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(l)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert,* 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert,* 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id;* 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively

presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert,* 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert,* 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id* at 142; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 404.1566.

## *The ALJ's Findings*

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16.) At step two, the ALJ concluded that plaintiff had the following severe impairments: fibromyalgia; sleep apnea; and obesity. (Tr. 16-21.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 21.) The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to "perform sedentary work . . . with the following non-exertional limitations: the claimant should avoid all exposure to pulmonary irritants and is limited to occasional postural activities with the exception of no climbing of ladders, ropes or scaffolds." (Tr. 21-26.) At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a bookkeeper and business manager. (Tr. 26-27.) The ALJ therefore concluded plaintiff was not disabled. (Tr. 27.) The ALJ did not proceed to step five.

\ \ \ \ \

*Discussion*

I.  Plaintiff's Depression at Step Two.

Plaintiff argues the ALJ erred at step two by failing to find her depression was a severe impairment. (Pl.'s Opening Br. 9-13, Pl.'s Reply Br. 1-8.) Specifically, plaintiff argues the ALJ did not recount the medical evidence accurately and confused "minimal cognitive findings with minimal depression." (Pl.'s Opening Br. 11.)

    A.  *The ALJ's summary of the evidence.*

At step two, the ALJ considers whether a claimant has a severe medically determinable physical or mental impairment, or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is not severe if it does not significantly limit his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521. Basic work activities are

> the abilities and aptitudes necessary to do most jobs. Examples of these include –
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is not severe if it is merely "a slight abnormality (or

combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing SSR 96–3(p) (1996)).

Here, the ALJ noted plaintiff's history of depression and mild memory difficulties but overall found the medical evidence of record did not support finding either were severe impairments. (Tr. 19.) First, the ALJ cited treatment records from 2011, 2012, and 2013 which records showed plaintiff's mental status examinations were within normal limits with normal mood and affect and intact judgment and insight. (Tr. 19, 277, 282, 286, 290, 304.)[1]

Next, the ALJ noted plaintiff's memory loss and confusion in October 2011, but cited an examination from that time that showed normal mood and appropriate affect. (Tr. 19, 312.) The ALJ also cited a December 2012 neuropsychological test performed by Dr. Michael R. Villaneuva who found plaintiff showed only "very mild findings" with respect to her episodic memory, and overall opined that she had "no restrictions from a neurocognitive standpoint." (Tr. 19, 335.) Third, the ALJ noted that plaintiff testified at the hearing that she had "not sought *any* consistent treatment for her mental health issues since her alleged onset date." (Tr. 20.) Fourth, the ALJ found that plaintiff's alleged "brain fog" had not been present for the requisite twelve months, and that no treating physician had determined her condition would be debilitating for twelve months or possibly result in her death. (*Id.*) Finally, the ALJ noted that a State Disability Determination Services psychological medical consultant who reviewed plaintiff's medical records on July 31, 2012, found her mental impairments were "nonsevere." (Tr. 20, 82.)

Plaintiff argues the ALJ confused "minimal cognitive findings with minimal depression,"

---

[1] This court notes the pages cited by the ALJ were all off by a single page. The page numbers listed in this opinion are those pages that contain the information referenced by the ALJ, not the page numbers listed by the ALJ in his September 19, 2013 decision.

noting that Dr. Villaneuva wrote, "the primary finding from this examination is one of significant depression," and two weeks later wrote that plaintiff's depression was not adequately controlled and "significant depression can disrupt efficient cognitive functioning." (Pl.'s Opening Br. 11, Tr. 333-34.) However, the court finds the ALJ reasonably considered plaintiff's medical records and concluded her depression was not severe because it did not cause "more than minimal limitations in the [plaintiff]'s ability to perform basic mental work activities." (Tr. 20.) Indeed, an independent review of the record supports the ALJ's finding. On December 27, 2012, although Dr. Villaneuva found plaintiff's depression "does not seem to be under good control," he overall wrote she had "no restrictions/limitations from a neurocognitive standpoint." (Tr. 334.) Additionally, in reports from December 27, 2012, and January 14, 2013, Dr. Villaneuva found plaintiff had only "mild weaknesses" in episodic memory. (*Id.*) Finally, on March 6, 2013, Dr. Brian J. Mateja noted that plaintiff's depression symptoms "have gotten some better." (Tr. 351.) While variable interpretations of this evidence may exist, the ALJ's analysis was reasonable such that it must be upheld. *Batson v. Comm'r*, 359 F.3d 1190, 1198 (9th Cir. 2004). Additionally, any alleged error is harmless because the ALJ found plaintiff had other severe impairments at step two and continued with the sequential analysis. (Tr. 16-27, *see Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's mistake is harmless where it is nonprejudicial to the claimant.)

The ALJ's decision is upheld as to this issue.

  B.  *The opinion of Dr. Mateja.*

Next, plaintiff argues the ALJ failed to give a legally sufficient reason to reject the opinion of treating physician Dr. Brian J. Mateja. (Pl.'s Opening Br. 13-16, Pl.'s Reply Br. 8-11.) Specifically, plaintiff argues the reasons the ALJ cited for discrediting Dr. Mateja's August 12, 2013

medical source statement show the ALJ misunderstands the symptoms of fibromyalgia. (Pl.'s Opening Br. 14-15, Pl.'s Reply Br. 10.)

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

On August 12, 2013, Dr. Mateja completed a Fibromyalgia Medical Source Statement where he opined that plaintiff suffered from fibromyalgia and had the following symptoms: "multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, breathlessness, anxiety, panic attacks and depression." (Tr. 340.) Overall he described plaintiff's work limitations included only being able to sit for 30 minutes at one time, stand for one hour at one time, that she could sit about two hours in an eight-hour workday, could stand/walk about four hours in an eight-hour workday, and every few hours she would need unscheduled five-to-ten-minute breaks. (Tr. 341-42.) Finally, Dr. Mateja opined plaintiff would be off-task at least 25 percent or more of the workday and would be absent from work more than four days per month. (Tr. 343.)

Here, the ALJ gave "[n]o significant weight" to Dr. Mateja's August 12, 2013 report, finding that "Dr. Mateja's own treatment records contain no clinical findings or studies to substantiate his opinion that the [plaintiff] is disabled due to her fibromyalgia condition." (Tr. 25-26.) First, the ALJ noted Dr. Mateja's treatment records from 2013 show plaintiff had a "normal gait, no tenderness to palpitation and full range of motion in her extremities." (Tr. 26, 344-59.) Next, the ALJ found conflicting evidence in Dr. Mateja's medical reports, noting although he reported in August 2013

that plaintiff suffered from severe pain in her lumbosacral spine, cervical spine, thoracic spine and chest, his June 2013 treatment notes showed "no tenderness in these areas." (Tr. 26, 359.) Third, the ALJ found Dr. Mateja's bi-monthly treatment of plaintiff seemed inconsistent with someone who was "allegedly suffering from such severe physical impairments." (Tr. 26.)

Finally, the ALJ found Dr. Mateja's treatment notes "wholly inconsistent" with plaintiff's "benign physical examination findings as noted in the treatment records at Exhibit 10F and the expert testimony of the medical expert at the hearing." (Tr. 26.) Exhibit 10F are medical records from plaintiff's treatment with Dr. David Dryland from August 12, 2013 and August 21, 2013. (Tr. 360-69.) Dr. Dryland's treatment records from August 12, 2013 indicate that on physical examination of plaintiff he found she had a normal gait, that all joints had good stability, range of motion and strength except her cervical spine which had mild decreased range of motion and was "not that tender on exam." (Tr. 362.) Additionally, Dr. Dryland noted that plaintiff had "18/18 1/2+ fibro tender points, real mild." (*Id.*) Overall he diagnosed plaintiff with "[l]ikely evolving fibromyalgia, but not definite." (Tr. 363.)

The ALJ was required to give a specific and legitimate reason for discrediting Dr. Mateja's opinion because it was inconsistent with the opinion of Dr. Dryland who found plaintiff's symptoms "overall don't make sense but fibro most likely." (Tr. 363.) *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence.) As the ALJ denoted, although plaintiff suffered from the severe impairment of fibromyalgia, Dr. Mateja's treatment records showed inconsistencies both within his own notes and with the medical treatment notes of Dr. Dryland. Indeed, although plaintiff complained of severe pain in her spine and chest,

Dr. Mateja found "no tenderness in these areas" upon physical examination. (Tr. 359.) Additionally, the ALJ noted that Dr. Dryland's examination of plaintiff showed a "benign physical examination" with only "real mild" fibromyalgia tender points. (Tr. 362-63.) *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject physician's opinion when the opinion conflicts with physician's own treatment notes).

Plaintiff argues the ALJ misunderstands fibromyalgia, but this court finds plaintiff's argument unpersuasive. Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms; there are no laboratory tests to confirm the diagnosis. *Benecke*, 379 F.3d at 590. Here, the ALJ acknowledged plaintiff's fibromyalgia was a severe impairment, yet discredited only the overall limitations Dr. Mateja opined plaintiff would have because of this impairment. *See* 20 C.F.R. § 404.1527(e)(l) (the law reserves the disability determination to the Commissioner.) Overall, this court finds the ALJ provided a specific and legitimate reason for discrediting the opinion of Dr. Mateja with respect to plaintiff's fibromyalgia limitations. There is no error.

C.   *Plaintiff's symptom testimony.*

Finally, plaintiff argues the ALJ failed to provide a clear and convincing reason to reject her symptom testimony. (Pl.'s Opening Br. 16-18, Pl.'s Reply Br. 11-12.) Again, plaintiff argues the reasons the ALJ used to discredit plaintiff's symptom show the ALJ has a "misunderstanding of fibromyalgia." (Pl.'s Opening Brief 16-18.)

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's

Page 10 - OPINION AND ORDER

testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects of [her] symptoms [were] not credible" for the following reasons: (1) there was a lack of medical evidence to support her alleged limitations; (2) she left her previous employment for reasons other than her disability; (3) her treatment was inconsistent with her alleged disabling pain and fatigue; and (4) her activities of daily living were inconsistent with her underlying allegations of disability. (Tr. 23-24.) This court addresses each reason in turn.

\\\\\

Page 11 - OPINION AND ORDER

1. Lack of medical evidence.

First, the ALJ discredited plaintiff because he found "the documentary evidence of record and the [plaintiff]'s own statements and testimony simply do not support her basic claims" citing medical records related to plaintiff's fibromyalgia, sleep apnea, and obesity. (Tr. 23.) With respect to plaintiff's fibromyalgia, the ALJ noted although plaintiff complained of "chronic fatigue and pain" her diagnostic test results were "generally unremarkable and contain little evidence to support her alleged symptoms." (Tr. 23.) The ALJ specifically noted Dr. Dryland's treatment notes from August 2013 where on physical examination of plaintiff he found she had only "mild" fibromyalgia tender points. (Tr. 23, 362.) Dr. Dryland also found that plaintiff's upper and lower extremities had "good stability, range of motion and strength, with no effusions, warmth or tenderness" except for her cervical spine, which he found had a decreased range of motion but was "not bad, not that tender on exam." (Tr. 23, 362.) Finally, the ALJ found plaintiff's various pain locations were treated conservatively and surgery had never been recommended. (Tr. 23.)

Next, with respect to plaintiff's sleep apnea the ALJ noted a September 24, 2011 sleep study "revealed only 'mild' obstructive sleep apnea." (Tr. 23, 299-302.) The ALJ also wrote that in May 2012 plaintiff "reported her daytime sleepiness and fatigue was much better since she started using her CPAP," that she was sleeping eight hours a night, not having trouble falling or staying asleep, and felt energized during the day. (Tr. 23, 330.) Additionally, the ALJ found that, other than Dr. Mateja, no other treating physician reported any disabling limitations due to plaintiff's fibromyalgia or sleep apnea, or "ever identified any significant functional loss with respect to the [plaintiff]'s physical impairments." (Tr. 23.) In making these findings the ALJ noted the reports of the State agency physical medical consultant who reviewed plaintiff's records on August 1, 2012 and

determined she was capable of performing "essentially light level work, with some postural and environmental limitations" and Dr. Reuben Beezy, the physical medical expert, who opined plaintiff could perform sedentary level work with some postural and environmental limitations" at the September 12, 2013 ALJ hearing. (Tr. 23, 38-39, 78-87.)

Finally, with respect to her obesity, the ALJ noted treatment records from 2011 to 2013 which showed plaintiff had a "normal gait and station, with full strength and range of motion in her upper and lower extremities." (Tr. 23-24, 280, 360.) Additionally, the ALJ found plaintiff denied chest pain, shortness of breath, chest tightness, headache or dizziness, and "reported the ability to do laundry, prepare meals, go shopping and care for her pets" which the ALJ determined "demonstrat[ed] a good ability to stand, walk, sit, reach, lift and carry." (Tr. 24, 202-09, 289, 338.) Finally the ALJ noted that no treating or examining physicians reported any disabling limitations due to her obesity. (Tr. 24.)

Plaintiff argues the ALJ misunderstands fibromyalgia, and thus the reasons cited by the ALJ for rejecting her symptom testimony are not clear and convincing. (Pl.'s Opening Br. 16-17, Pl.'s Reply Br. 11.) The court rejects plaintiff's argument. Here, the ALJ did not reject the existence of plaintiff's fibromyalgia: he found it was a severe impairment at step two, but merely rejected the severity of plaintiff's fibromyalgia symptoms. Indeed, although plaintiff complained of fibromyalgia pain and of problems with concentration, the record shows doctors overall found plaintiff had a good range of motion, strength, and stability, had no restrictions or limitations from a neurocognitive standpoint, and was capable of low stress or sedentary work. (See Tr. 335, 340, 360 which include Dr. Villaneuva's December 27, 2012 medical report, Dr. Mateja's August 12, 2013 medical report, and Dr. Dryland's August 12, 2013 medical report, respectively.) "Although lack of medical

Page 13 - OPINION AND ORDER

evidence cannot form the sole basis for discrediting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Although plaintiff's sleep apnea, although mild, and initially well controlled continued to be an issue for her throughout 2013, this error is harmless because the ALJ provided other clear and convincing reason for discrediting plaintiff's symptom testimony. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006.) (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.") Therefore, the lack of medical evidence supporting plaintiff's symptoms is a clear and convincing reason for discrediting her symptom testimony.

2. Leaving her job for reasons unrelated to disability.

Next, the ALJ found plaintiff lost her job as a bookkeeper in September 2011 because of lack of work, and not her disability, noting it was a "business-related layoff." (Tr. 24, 337.) Indeed, although plaintiff testified that she lost her job because of a combination of lack of work and reaching a mutual agreement with her manager that "it was time for [her] to step down," the record reflects that she specifically told Dr. Villaneuva on December 17, 2012, that she was laid off work "because of lack of business, not because of her symptoms." (Tr. 337.) Additionally, in a disability report from October 11, 2011, she reported she stopped working because of both her disability and for other reasons, which she described as her "[e]mployers were having financial issues." (Tr. 193.) This is a second clear and convincing reason for rejecting plaintiff's symptom testimony.

3. Sporadic medical treatment.

Next, the ALJ found although plaintiff complained of disabling pain since June 22, 2011, she has not sought any consistent medical treatment, overall noting that her treatment was "sporadic at best" and that she only sought treatment once during the 2012 calendar year. (Tr. 24, 326-32.)


Additionally, he noted that plaintiff testified to not seeking "*any* mental health treatment since her alleged onset date." (Tr. 24, emphasis in original.) Plaintiff argues that the number of visits does not indicate the severity of the disease and there was no notation in the record that plaintiff missed appointments. (Pl.'s Opening Br. 16.) Although nothing in the record indicates plaintiff was non-compliant with her treatment, an ALJ can use the lack of consistent medical treatment to discount a plaintiff's symptom testimony. *See Burch*, 400 F.3d at 681 (lack of consistent medical treatment can be considered in discrediting claimant's symptom testimony). Indeed, plaintiff's medical records show she had only three medical visits in 2012, one with Dr. Carlos Marchini to assess her sleep apnea, and two with Dr. Villaneuva for an evaluation of her memory difficulties. (Tr. 330, 334-39.) The ALJ's finding that her lack of medical treatment is inconsistent with her complaints is reasonable such that the ALJ's finding regarding plaintiff's credibility is upheld.

　　　　4.　　Activities of daily living.

Finally, the ALJ found plaintiff's activities of daily living were inconsistent with her allegations of disability. (Tr. 24.) First, the ALJ noted that although plaintiff claimed she was unable to sit for more than a few minutes due to severe pain she testified to taking a road trip with her husband just three weeks before the hearing, suggesting "a good ability to sit for prolonged periods." (*Id.*) Next, the ALJ found that plaintiff reported being able to perform daily tasks, do laundry, cook, and go shopping, thus "demonstrating a good ability to stand walk, reach, lift, and carry." (*Id.*) Finally, the ALJ noted that her reports of needing to take multiple naps during the day was inconsistent with her own reports to her treating provider in May 2012 that she was "feeling energized during the day and only took naps on a 'seldom' basis" and reported being able to sleep eight hours a night and having no problems falling or staying asleep. (Tr. 24. 329).

The record supports one of the ALJ's findings, but not the others. First, with respect to the ALJ's finding that plaintiff's ability to take a road trip showed she has a "good ability to sit for prolonged periods," her testimony at the September hearing was that she would nap in the back of the motor home while her husband drove and not that she was sitting for prolonged periods of time. (Tr. 65.) Second, the record reflects plaintiff could still go grocery shopping, did the laundry, and would clean the house. (Tr. 50, 61-62, 205, 225.) Third, although plaintiff's obstructive sleep apnea and fatigue were initially well controlled, the record reflects that her fatigue continued to be an issue for her through 2013. (Tr. 53-55, 202-09, 314, 330-31, 345, 360-61.) Although two of the activities of daily living the ALJ cited as inconsistent were not, the ALJ did find plaintiff's activities of daily living inconsistent with plaintiff's overall complaints of severe pain. Additionally, despite the errors in this part of the ALJ's findings, these errors are harmless because the ALJ provided other clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r*, 359 F.3d at 1197 (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld).

In sum, the ALJ provided a clear and convincing reason for discrediting plaintiff's symptom testimony concerning the severity of her symptoms. The court finds no error.

*Conclusion*

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 31st day of January, 2017.

JOHN V. ACOSTA
United States Magistrate Judge

Page 16 - OPINION AND ORDER